IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

JERMAINE R. REVERE,

    Plaintiff,

v.                               CIVIL ACTION NO.: CV513-051

LARRY R. PERRY; DONNIE BUSSY;
JERRY T. WATERS; and DARYLL HART,:

    Defendants.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently incarcerated at Smith State Prison in Glennville, Georgia, filed a cause of action pursuant to 42 U.S.C. § 1983 to contest certain conditions of his confinement while he was housed at Ware State Prison in Waycross, Georgia. Defendants filed a Motion for Summary Judgment. Plaintiff filed a Response. For the reasons which follow, Defendants' Motion should be **GRANTED**.

## STATEMENT OF THE CASE

Plaintiff asserts that upon his arrival at Ware State Prison, his body was examined for gang-related tattoos. Plaintiff contends that "two CERT team officers who were under the instruction of Lt. Berry" discovered his "Gangster Disciple 360" tattoo and warned him of a recent stabbing incident between the Gangster Disciples and Hispanics at the prison. (Doc. No. 1, pp. 4–5). Plaintiff alleges after he was seen by medical, he and another Gangster Disciple, Rashad Leach, were taken to building H-1 where approximately 23 Hispanics were also housed. Plaintiff avers that he told the

AO 72A
(Rev. 8/82)

CERT officers he could not be housed with the Hispanics because they would kill him. Plaintiff claims the officers stated Plaintiff could not be moved, and he would be all right until Monday. Plaintiff alleges later the same day he spoke to Sgt. Perry, Sgt. Bussey, Lt. Waters, and Lt. Day about being moved to another building or into protective custody. Plaintiff avers that he was told to return to his cell and Plaintiff's request would be addressed when they had time. Plaintiff contends that Warden Hart conducted a dorm inspection during which Plaintiff requested again to be moved along with all the other Gangster Disciples in cell 18. Plaintiff claims Warden Hart told him he would be all right and left.

Plaintiff avers that Warden Hart again inspected the dorms while Lt. Berry ordered a search of cell 19 where two Hispanics were housed. Plaintiff contends two machetes and "the making (sic) for two more" were found; the officers left the cell laughing. (Id. at p. 7). Plaintiff alleges that two hours later, the Hispanics were back in their cell. Plaintiff asserts that the next day he observed three Hispanics unscrewing a gray box over the control booth. Plaintiff contends the officers ignored a request for protective custody. Plaintiff alleges "Leach" then told him he had been stabbed. Plaintiff asserts a "mob of Mexicans were charging" him, and he sustained several stab wounds all over his body. (Id. at p. 8). Plaintiff contends he was chased by a "mob of Mexicans with machetes, thats [sic] when I was chopped and sliced to where I lost 3 fingers on my left hand. Eventually I was let out of building by being thrown in the dead pile, for I died two times." (Id. at p. 9). Plaintiff avers he filed a grievance which was denied at all levels.

AO 72A
(Rev. 8/82)

Defendants assert that they had no personal knowledge of an alleged war between Hispanic inmates and Gangster Disciples or of incidents occurring in the G- and H-buildings in May or June 2012. Defendants also assert that they had no personal knowledge of an incident involving Plaintiff on June 26, 2012. Defendants also assert that, to the extent Plaintiff attempts to do so, he cannot hold any of the Defendants liable on a vicarious liability basis. Defendants contend that Plaintiff cannot sustain a cause of action for monetary damages against them in their official capacities. Finally, Defendants contend that they are entitled to qualified immunity.

## STANDARD OF REVIEW

Summary judgment "shall" be granted if "the movant[s] show[ ] that there is no genuine dispute as to any material fact and that the movant[s are] entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and (Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

The moving parties bear the burden of establishing that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving parties must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant[s are]

3

entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving parties may discharge their burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322-23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Co., Fla., 630 F.3d 1346, 1353 (11th Cir. 2011).

## DISCUSSION AND CITATION TO AUTHORITY

Defendants assert that Plaintiff cannot establish that they were deliberately indifferent to a known risk of harm Plaintiff faced. Defendants note Plaintiff's testimony that he informed Defendants that there was a "war" between Hispanic and Gangster Disciples inmates. Defendants assert that Plaintiff did not inform any of them that he was in fear of any particular inmate or a particular group of inmates. Defendants allege that Plaintiff had no specific indication that he was a target of violence prior to the June 26, 2012, stabbing, as there had been no specific threat made against Plaintiff. Defendants also allege that Plaintiff did not tell any of them that there had been a specific threat against him, and even Plaintiff's own testimony reveals that he did not have a particularized fear or threat. Defendants contend that, at best, Plaintiff shows a generalized awareness of a risk, which is insufficient to establish liability.

Plaintiff avers that, upon his arrival at Ware State Prison on June 7, 2012, an unknown CERT member told him there was a war between the Hispanics and Gangster

4

Disciples. Plaintiff contends that he asked to be moved to a unit where he would be safe after learning that he was going to be in the H building. Plaintiff also contends that he was told to wait until the following Monday to be moved. Plaintiff asserts that he spoke to Defendants Waters and Bussey about the alleged "war", and they told him to wait until that Monday to be moved. Plaintiff also asserts that he was left in the dormitory for 18 days before the assault, even after he spoke to all of the Defendants about the "situation." (Doc. No. 39, p. 10).

The Eighth Amendment's proscription against cruel and unusual punishment imposes a constitutional duty upon prison officials to take reasonable measures to guarantee the safety of prison inmates. "'To show a violation of [his] Eighth Amendment rights, [a p]laintiff must produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation.'" Smith v. Reg'l Dir. of Fla. Dep't of Corr., 368 F. App'x 9, 14 (11th Cir. 2010) (quoting Purcell ex rel. Estate of Morgan v. Toombs Cnty., Ga., 400 F.3d 1313, 1319 (11th Cir. 2005)). "To be deliberately indifferent a prison official must know of and disregard 'an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Purcell, 400 F.3d at 1319-20). Whether a substantial risk of serious harm exists so that the Eighth Amendment might be violated involves a legal rule that takes form through its application to facts. However, "simple negligence is not actionable under § 1983, and a plaintiff must allege a conscious or callous indifference to a prisoner's rights." Smith, 368 F. App'x at 14. In other words, "to find deliberate indifference on the part of a prison official, a plaintiff inmate must

AO 72A
(Rev. 8/82)

show: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." Thomas v. Bryant, 614 F.3d 1288, 1312 (11th Cir. 2010). Prison officials are not held liable for every attack by one inmate upon another, Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986), nor are they guarantors of a prisoner's safety. Popham v. City of Talladega, 908 F.2d 1561, 1564 (11th Cir. 1990). Rather, a prison official must be faced with a known risk of injury that rises to the level of a "strong likelihood rather than a mere possibility" before his failure to protect an inmate can be said to constitute deliberate indifference. Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990).

Like any deliberate indifference claim, a plaintiff must satisfy both an objective and a subjective inquiry. Chandler v. Crosby, 379 F.3d 1278, 1289-90 (11th Cir. 2004). Under the objective component, a plaintiff must prove the condition he complains of is sufficiently serious to violate the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 8 (1992). As for the subjective component, "the prisoner must prove that the prison official acted with 'deliberate indifference.'" Miller v. King, 384 F.3d 1248, 1260-61 (11th Cir. 2004) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). To prove deliberate indifference, the prisoner must show that prison officials "'acted with a sufficiently culpable state of mind'" with regard to the serious prison condition at issue. Id. (quoting Chandler, 379 F.3d at 1289-90). Allegations of a jail official's generalized awareness that someone is "a 'problem inmate' with a well-documented history of prison disobedience and [is] prone to violence" is not enough to show [his] subjective awareness that the inmate poses a substantial risk of serious harm" to other inmates.

AO 72A
(Rev. 8/82)

Gross v. White, 340 F. App'x 527, 531 (11th Cir. 2009) (citing Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003)).

In their affidavits, each Defendant declares that he was not aware of any alleged war between the Hispanics and Gangster Disciples, that Plaintiff did not tell him that he feared for his safety (from Hispanic inmates or otherwise), or that Plaintiff wished to be placed in protective custody. (Doc. No. 37-3, ¶¶ 11, 18, 25; Doc. No. 37-6, ¶¶ 11–12, 15, 19, 31–32; Doc. No. 37-8, ¶¶ 18–19, 24, 29, 31; Doc. No. 37-13, ¶¶ 12, 17, 22, 25–26). Defendants also declare that they were not aware of any incidents between the Hispanics and Gangster Disciples in May or June 2012. (Doc. No. 37-3, ¶¶ 10–11; Doc. No. 37-6, ¶¶ 17, 19; Doc. No. 37-8, ¶¶ 18–19; Doc. No. 37-13, ¶¶ 11–12). Defendant Hart asserts that he did not have personal knowledge of the incidents which occurred on May 29 and 30, 2012, but he was informed of the incidents based on his position as warden at the time. Defendant Hart states that he reviewed the incident reports from May 29 and 30, 2012. Though these incidents involved Hispanic and black inmates, some of whom are Gangster Disciples, Defendant Hart states that there was no indication that these incidents were related to any alleged war between Hispanics and Gangster Disciples. In addition, Defendant Hart states that these two (2) incidents occurred in the G building and all weapons which were found were confiscated. (Doc. No. 37-8, ¶¶ 13–14).

In contrast, Plaintiff declares that the "[D]efendants were notified of the stabbings between the two groups of inmates way befor[e] the June 26, 2012[,] incident." (Doc.

No. 39, p. 4). Plaintiff also declares that he "spoke with all [D]efendants on different occasions about the situation in which [he] was in while living in building H-1[.]" (Id.).[1]

Accepting Plaintiff's contentions as true—that Defendants were aware of an alleged "war" between the Hispanics and Gangster Disciples and that he spoke with all Defendants about the situation—Plaintiff fails to show any more than a generalized risk of harm to his safety. The incidents of May 29 and 30, 2012, occurred almost a month before Plaintiff was attacked.[2] In addition, these incidents occurred in a building other than the one in which Plaintiff was housed. Further, although Plaintiff states that he informed Defendants that he could not be housed in H building because he is a Gangster Disciple and that he was told he would have to wait until the following Monday before anything could be done, there is no evidence that Plaintiff submitted a written request to be placed in protective custody, as required by Standard Operating Procedure IIB09-0001.[3] (Doc. No. 37-5). Quite simply, Plaintiff fails to set forth any evidence which reveals that he informed any of the Defendants that he faced a particularized fear of harm from Hispanic inmates in general or of the Hispanic inmates in particular who were housed in H building. Because Plaintiff provides nothing more

---

[1] Plaintiff testified during his deposition that he did not want to remove his shirt while he was in H building, even though it was hot. Plaintiff also testified that, if he had removed his shirt, someone could then see all of the tattoos which identified him as a Gangster Disciple. (Doc. No. 37-2, pp. 9, 20–21). There is nothing before the Court which reveals that the Hispanic inmates in H building had any knowledge of Plaintiff's affiliation, even accepting Plaintiff's allegations that the Hispanic and Gangster Disciple inmates were at "war".

[2] There is no dispute that Plaintiff was attacked and received injuries as a result. However, these facts are immaterial to whether Defendants were deliberately indifference to a serious risk of harm to Plaintiff's safety.

[3] The undersigned does not imply that Plaintiff's alleged failure to abide by established procedures necessarily means that Defendants were without knowledge of Plaintiff's allegations concerning a "war" between the Hispanic and Gangster Disciple inmates. The undersigned notes this failure only in reaching a determination that Plaintiff does not meet his burden of establishing a genuine dispute as to any fact material to his Eighth Amendment claim.

8

than evidence relating to a generalized fear, he has not overcome his burden of establishing a genuine dispute as to any fact material to his deliberate indifference claim.

It is unnecessary to address the remaining grounds of Defendants' Motion.

### CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendants' Motion for Summary Judgment be **GRANTED**. It is also my **RECOMMENDATION** that Plaintiff's Complaint be **DISMISSED**.

**SO REPORTED** and **RECOMMENDED**, this 19th day of August, 2014.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)

9